# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL CASE NO. 5:07-CV-123-RLV-DCK

| | |
|---|---|
| NANCY L. OVERCASH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on the "Plaintiff's Motion For Summary Judgment" (Document No. 14) and "Plaintiff's Memorandum In Support Of Motion For Summary Judgment" (Document No. 15), filed January 25, 2008; and Defendant Commissioner's "Motion For Judgment On The Pleadings" (Document No. 17) and "Defendant's Memorandum In Support Of The Commissioner's Decision" (Document No. 18), filed March 24, 2008. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B), and these motions are ripe for disposition.

After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be <u>denied</u>; Defendant's "Motion for Judgment on the Pleadings" be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

## I. PROCEDURAL HISTORY

This case has a long history. Plaintiff Nancy L. Overcash ("Plaintiff") through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. On May 21, 2002, Plaintiff filed an application for a period of disability and disability

insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § *et seq.,* alleging an inability to work due to a disabling condition beginning August 15, 2001. (Transcript of the Record of Proceedings ("Tr.") 243). The Commissioner of Social Security (the "Commissioner") denied Plaintiff's application initially on July 12, 2002, and again after reconsideration on October 7, 2002. (Tr. 151-52). Plaintiff filed a timely written request for a hearing on December 3, 2002. On January 21, 2004, Plaintiff appeared and testified at a hearing before Administrative Law Judge Helen O. Evans ("ALJ"). (Tr. 17). On or about March 24, 2004, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 153-67).

Plaintiff filed a request for review of the ALJ's decision on May 21, 2004, which was granted by the Appeals Council. (Tr. 203). On March 7, 2005, the decision of the ALJ was vacated by the Appeals Council, and a new hearing before the ALJ was ordered. (Tr. 168-71). Following the new hearing on December 19, 2005, the ALJ issued another unfavorable decision denying disability benefits on November 3, 2006. (Tr. 14-36). The November 2006 decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request on May 16, 2007. (Tr. 9-12).

Plaintiff's action seeking a reversal of the ALJ's determination was filed on July 17, 2007, in the United States District Court for the Middle District of North Carolina and then transferred to this Court on October 31, 2007.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, (1971); and (2) whether the

2

Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Perales, 402 U.S. at 401, the Fourth Circuit defined "substantial evidence" as

> being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether at any time through the date of her decision, the Plaintiff was under a "disability" as that term of art is defined for Social Security purposes.[1] To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In her November 3, 2006 decision, the ALJ found that Plaintiff was not "disabled" at any time between August 15, 2001, and the date of her decision (Tr. 18). The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. (20 C.F.R. § 404.1520(a)). The five steps are:

(1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

(20 C.F.R. § 404.1520(a)(4)(i-v)). In this case the ALJ determined at the fifth step that the Plaintiff was <u>not</u> disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) quoting 42 U.S.C. § 423(d)(1)(A).

Specifically, the ALJ concluded first that Plaintiff had not engaged in any substantial gainful activity after her alleged disability onset date. (Tr. 20). At the second step, the ALJ found that Plaintiff's bilateral carpal tunnel syndrome; status post right hand release; plantar fasciitis secondary to pes planus; and status post breast cancer treatment with residuals of a mastectomy, including loss of strength and range of motion of the left shoulder, were severe impairments. (Tr. 20)[2]. At the third step, the ALJ determined that none of Plaintiff's impairments, or a combination thereof, met or medically equaled one of the impairments listed in 20 C.F.R. 404, subpart P, Regulation 4, Appendix 1. (Tr. 21).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform light exertional activity with the following limitations:

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk [for] six hours in an eight hour day; option to alternate between sitting and standing in 30 minute increments; no overhead reaching; occasional reaching to the shoulder level; frequent handling and fingering; avoid concentrated exposure to extreme hot or cold conditions; avoid exposure to workplace hazards.

(Tr. 21). The ALJ also considered Plaintiff's testimony regarding her impairments' severity and resulting functional limitations, but deemed this testimony not credible. (Tr. 32). At the fourth step, however, the ALJ found that Plaintiff could not perform her past relevant work (Tr. 34, Finding 6).

At the fifth and final step, the ALJ concluded based on the testimony of a vocational expert and "considering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 35). Specifically, the vocational expert testified that according to the factors given by the ALJ,

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

occupations claimant could perform included being a final inspector and a surveillance monitor. (Tr. 35). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between August 15, 2001, and the date of her decision. (Tr. 35).

Plaintiff on appeal to this Court makes the following assignments of error: (1) that the ALJ failed to make a proper step five evaluation of whether there were other jobs Plaintiff could perform; (2) that the evidence does not support the Plaintiff's weighing of the opinions of the treating physician's testimony; (3) that the ALJ's determination of Plaintiff's credibility was unsupported; and (4) that the ALJ's RFC assessment conflicts with medical source statements from the treating physician and other examining physicians. (Document No. 15). The undersigned will discuss these contentions in turn.

### A. Step 5 Evaluation

In her first assignment of error, Plaintiff argues that the Commissioner failed to meet his burden of proof by failing to "properly pose a complete hypothetical question and failed to properly evaluate [the vocational expert's] testimony." (Document No. 15 at p.3-4). The sequential evaluation process places the burden of production and persuasion on Plaintiff at steps one through four. 20 C.F.R. § 404.1520(g); Hunter, 993 F.2d at 35; Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983). This burden requires Plaintiff to make a prima facie showing of a disability preventing engagement in her prior work activity. Id. Plaintiff satisfied her burden in this case, thus shifting the burden to the Commissioner to establish that Plaintiff retains the capacity to perform an alternative work activity existing in the national economy.[3] Id. To this end, the regulations permit the administrative notice of the significant number of unskilled sedentary, light, and medium jobs

---

[3] Plaintiff's assessed RFC precludes the performance of any past relevant work. (Tr. 34).

existing in the national economy through incorporation of the medical-vocational guidelines. See 20 C.F.R. §§ 404.1566(d); 404, Subpart P, Appendix 2, § 200.00(b).[4] When exertional *and* non-exertional limitations or restrictions are present, however, these guidelines are not directly applied, but rather constitute a guiding framework for the Commissioner's decision. 20 C.F.R. § 404.1569a(d). In such cases, the Fourth Circuit requires the Commissioner to "produce a vocational expert to testify that the particular claimant retains the ability to perform specific jobs which exist in the national economy." See Grant, 699 F.2d at 192, citing Taylor v. Weinberger, 512 F.2d 664 (4th Cir. 1975).

The Fourth Circuit has held that in order to be helpful, VE testimony must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).[5] A hypothetical question is proper, however, only if it adequately reflects a claimant's RFC for which the ALJ has sufficient evidence. See Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005). Here, the ALJ asked the VE what jobs, if any, a hypothetical individual with Plaintiff's age, education, work experience, and aforementioned RFC would be qualified to perform. (Tr. 145). The VE testified to the existence of jobs of the light category, including final inspector in industries such as bottled goods, canneries, small rubber product manufacturing and dry cell batteries. (Tr. 146). The ALJ went on to pose a second hypothetical regarding an individual like Plaintiff, but who could only do sedentary work. The VE

---

[4] Where the findings relative to a claimant's vocational factors (i.e., age, education and work experience) in combination with the RFC finding coincide with all of the criteria of a particular rule under the medical-vocational guidelines, the rule may be relied on at step five of the sequential evaluation process to direct a conclusion that a claimant is or is not disabled. 20 C.F.R. § 404, Subpart P, Appendix 2, § 200.

[5] In Walker, the court explained that this requirement's goal is to give credence to VE testimony by ensuring their awareness of a particular claimant's impairments and abilities. Walker, 889 F.2d at 51.

testified that such an individual could perform surveillance work, such as through monitors at a department store. (Tr. 147-48).

The ALJ thereby met the step five burden through VE testimony in response to an adequate hypothetical, which established that Plaintiff retained the capacity to perform an alternative work activity existing in the national economy. Despite this substantial evidence supporting the ALJ's step five determination, Plaintiff here alleges two specific deficiencies. Plaintiff argues first that the VE's testimony fails to match the restrictions the ALJ hypothesized; and second, that the ALJ's hypothetical question fails to include all of her alleged or assessed impairments. (Document No. 15, p.3-5).

Plaintiff argues that there are inconsistencies between the cited restrictions and the proffered final inspector positions due to the VE's testimony that such positions are performed while "primarily standing." (Document No. 15 at p.4). The VE explained that a final inspector's duties require

> viewing a small conveyer belt with . . . the product going around, and they will pluck off dented cans or irregularities of sorts,
> . . .
> Standing is usually the occasion, but they can request a stool and sit and watch that process. And they would, you know, maybe walk and down the line occasionally

(Tr. 146-47). The Commissioner disagrees with Plaintiff's assertion that the VE's description is inconsistent with the ALJ's articulated need for a sit/stand option. To the contrary, the VE explained that although final inspector work is *usually* performed while standing, the use of a simple stool allows performance of the work in the sitting or standing position. (Tr. 147).

Plaintiff also argues that the ALJ's hypothetical does not account for alleged limitations associated with her plantar fasciitis and neuropathy, headaches, obstructive sleep apnea, depression,

anxiety, and irritable bowel syndrome. (Document No. 15 at p.4). Regarding hypothetical questions, this Court must review whether the question reflects the limitations actually supported by substantial evidence. Johnson, 434 F.3d at 659. The ALJ's opinion indicates she considered carefully each of these alleged limitations and suggests that to the extent she found them credible they were factored into her RFC assessment and hypothetical questions. (Tr. 20-24, 27-28, 32, and 34).

Plaintiff also argues the ALJ found that she must "avoid exposure to workplace hazards," but failed to include this limitation in the hypothetical question posed to the VE. (Document No. 15 at p.4; Tr. 144-45). Although the Commissioner conceded to the absence of this limitation from the ALJ's hypothetical, the Court agrees that this omission in no way affects the hypothetical's legal adequacy. The omission of Plaintiff's assessed need to "avoid exposure to workplace hazards" did not adversely affect the VE's testimony's purported purpose as none of the jobs cited require any exposure to workplace hazards. As such, the VE's testimony correctly cites work available in the national economy the Plaintiff could perform, and adequately fulfilled the purpose articulated in Walker.

In addition, the Fourth Circuit will not remand a matter due to harmless error. Camp v. Massanari, 22 Fed. Appx 311, 2001 WL 1658913 at *1 (4th Cir. 2001). The Camp court explains that absent a showing of prejudice, "any error on the part of the ALJ [is] harmless." Id., citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) (requiring a showing that the error's correction might lead to a different decision). Plaintiff has failed to show prejudice resulting from this omission. If the ALJ's hypothetical included the need to "avoid exposure to workplace hazards," the VE's testimony would remain unchanged as this additional limitation does not preclude any of

the jobs the VE cited. The VE based his testimony upon an adequate hypothetical and substantial evidence supports the ALJ's reliance on that testimony.

## B. Weight Given To Physicians' Testimony

Next, Plaintiff challenges the weight given to the opinion of her primary treating physician, Dr. Rajal Patel. A treating physician is a physician who has observed a plaintiff's condition over a prolonged period of time. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The Fourth Circuit has established that a treating physician's opinion need not be afforded controlling weight. Hunter, 993 F.2d at 35. The Commissioner has acknowledged that the ALJ afforded minimal weight to opinion evidence from Plaintiff's primary treating physician, Dr. Patel, or other treating sources, including Francis Slate, M.D., William Mason, M.D., and Scott Sherrill, M.D. (Document No. 18 at p.10; Tr. 34).

A proper disability determination requires consideration of all evidence in an applicant's case record. 20 C.F.R. § 404.1520(3). Such evidence often includes medical opinions that are evaluated and weighed in conjunction with all relevant evidence. 20 C.F.R. §§ 404.1527(b); 404.1527(d). Treating source opinions regarding the nature and severity of an impairment, however, are only entitled to controlling weight when found to be well supported by medically acceptable clinical and laboratory diagnostic techniques, and when not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(d)(2). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)[6]. When

---

[6] See also Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (finding that "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence").

an ALJ declines to afford a treating physician's opinion controlling weight, the regulations require consideration of the following factors: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion by the medical evidence; the opinion's consistency with the record as a whole; the source's area of specialization; and any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6). While an ALJ's decision need not explicitly discuss each factor, it must justify the amount of weight afforded with specific reasons. 20 C.F.R. § 1527(d)(2); SSR 96-2p[7].

Consistent with this precedent, the ALJ afforded Dr. Patel's opinions minimal weight, reasoning that they were "not supported by [her] own clinical notes" and "contradicted by" other evidence of record. (Tr. 33). The ALJ considered all Plaintiff's symptoms and their consistency with objective medical evidence, as well as the notes of several physicians familiar with Plaintiff's case. (Tr. 21-34). Plaintiff's arguments against this finding fail. Regarding the length, nature and extent of her treatment relationship with Dr. Patel, Plaintiff states that Dr. Patel treated her over thirty (30) times over the course of more than seven (7) years. (Document No. 15 at p.7). The ALJ noted the apparent minimal treatment Plaintiff required from Dr. Patel in the year prior to her November 19, 2003 opinion. (Tr. 33) The ALJ reasoned, "her treatment notes reflect very few visits in 2003, until November 2003, when [Plaintiff] apparently sought an opinion regarding her functional limitations, less than two months to her first hearing before the undersigned." (Tr. 33).

The ALJ's reasoning primarily focused on lack of supportability and consistency with the record. As to supportability, the ALJ found that Dr. Patel's treatment records did not support the

---

[7] An ALJ must give "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p.

11

level of limitation she opined. Specifically, Dr. Patel's opinions are "not supported by [her] own clinical notes, which reflect little by way of clinical findings and observations regarding her musculoskeletal complaints. Instead, these opinions appear to be based primarily on [Plaintiff's] self-reported limitations." (Tr. 33). See Mastro v. Apfel, 270 F.3d 171, 177-78 (4th Cir.2001) (affirming ALJ's disregard of treating physician's opinion because said opinion "was based largely upon the claimant's self-reported symptoms" and was not supported by the medical evidence). Plaintiff fails to cite to any evidence from Dr. Patel negating this conclusion. Rather, Plaintiff erroneously cites evidence found elsewhere in the record. (Document No. 15 at pp.7-9). While other physicians' reports and opinions relate to Dr. Patel's opinions' *consistency* with the record, and are addressed accordingly below, these reports say nothing about the opinions' *supportability*.[8] Absent citation to supporting evidence from Dr. Patel herself, Plaintiff fails to effectively argue these opinions' supportability.

Regarding consistency, the ALJ explained that Dr. Patel's opinions were inconsistent with findings from Joseph Wolyniak, M.D., and Carlo Yuson, M.D. The ALJ explained that Dr. Wolyniak found that

> [Plaintiff] was fully weight-bearing, had only a mildly antalgic stance, had a normal neurological exam, and had normal muscle strength and tone. Dr. Wolyniak's exam showed some pain on range of motion and limited motion of the left shoulder, but the findings regarding her hands and wrist showed that she had good grasp strength and pincer grasp strength, normal opposition of the thumbs with all digits bilaterally, and full range of motion of the wrists

---

[8] See 20 C.F.R. § 404.1527(d)(3)(noting that the issue of supportability, as it relates to the weighing of medical opinions, focuses on the amount of evidence the source provides, particularly medical signs and laboratory findings, supporting their opinion); *but see* 20 C.F.R. § 404.1527(d)(4)(noting that the issue of consistency, as it relates to the weighing of medical opinions, focuses on the opinions consistency with the record as a whole).

(Tr. 33). The ALJ also explained that Dr. Yuson's nerve conduction studies and clinical examinations did not show significant findings consistent with carpal tunnel syndrome. (Tr. 34). Plaintiff has failed to effectively explain how the ALJ erred by relying on these findings[9].

The ALJ explained that the "testimony of the medical expert, Dr. Slate, was considered and accorded limited weight, as his assessment appeared to rely disproportionately on Dr. Patel's opinion, which appeared to be based on claimant's subjective complaints rather than specific clinical findings in Dr. Patel's treatment notes." (Tr. 34). The ALJ similarly afforded limited weight to Dr. Mason's less than sedentary RFC finding, noting that when Dr. Mason actually examined the Plaintiff she displayed

> primarily limited range of the left shoulder, and mild limitation of motion of the right knee, but he did not assess [Plaintiff's] motor strength, refer to findings regarding her hands and wrists, or report any neurological findings. His assessment of her functional limitations appears to be based primarily on his observation that she had "multiple things in her record," which he does not cite, and on her subjective complaints rather than on his own clinical findings or any specific objective or clinical findings of her other providers

(Tr. 33).

The ALJ also afforded minimal weight to Dr. Sherrill's opinion that Plaintiff "remains disabled from work at this time." (Document No. 15 at 9, citing Tr. 421). The ultimate issue of whether a claimant is disabled is administrative in nature and is reserved for the Commissioner to determine. 20 C.F.R. § 404.1527(e). Therefore, opinions by Plaintiff's treating sources as to whether she is "disabled" or "unable to work" are considered by the ALJ along with the other

---

[9] Plaintiff improperly suggests that Drs. Wolyniak and Yuson's status as consultative examiners precludes the ALJ's reliance on their findings. (Document No. 15 at 10). Although Drs. Wolyniak and Yuson are not treating physicians, their opinions are entitled to significant weight given the nature of their treatment relationship and their specializations, and their findings' supportability and consistency with the record. 20 C.F.R. § 404.1527(d)(2)-(6).

relevant evidence, but can never be given special significance. Id. The ALJ explained that she considered Dr. Sherill's opinion, and noted

> [c]onsidered in context, the opinion implies the he considers [Plaintiff] to be disabled from her prior work, not from all work. Further, Dr. Sherrill also made it clear that it was a temporary assessment, to be re-evaluated in three month intervals . . . He also noted that while she had "some pain and considerable weakness in the shoulder," [Plaintiff] did not consider her pain to be severe enough to consider surgical correction

(Tr. 33).

Finally, the evidence from other involved physicians, Drs. Dubois (neurologist), Shapiro (podiatrist), Van Ness (physical and rehabilitative medicine specialist), and Sherill (orthopedic specialist), cited in Plaintiff's brief is actually consistent with the ALJ's RFC assessment and not Dr. Patel's. Plaintiff's shoulder, neck, back and wrist pain, noted by Drs. DuBois, Van Ness and Sherill, and the standing difficulties noted by Dr. Shapiro are all consistent with the ALJ's RFC requiring lifting and carrying of 20 pounds occasionally and 10 pounds frequently; standing for six hours in an eight hour day; the need for a sit/stand option; no overhead reaching; occasional reaching to the shoulder level; and frequent handling and fingering.

In short, substantial evidence appears to support the weight given by the ALJ to the various physicians' testimony.

### C. Residual Functional Capacity Assessment

Next, Plaintiff contends that the ALJ did not properly assess her RFC because it conflicted with the medical source statements from the treating physician and other examining physicians. (Document No. 15 at p.13). The regulations require the Commissioner to assess a claimant's RFC — the most she can still do despite their limitations — based on all relevant evidence of record. 20 C.F.R. § 404.1545(a)(1). The regulations also specify that when a case is before an ALJ, she is

responsible for the RFC assessment. 20 C.F.R. § 404.1546(c). In this case, the ALJ determined that Plaintiff retained the RFC to perform light exertional activity with the following limitations:

> lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk [for] six hours in an eight hour day; option to alternate between sitting and standing in 30 minute increments; no overhead reaching; occasional reaching to the shoulder level; frequent handling and fingering; avoid concentrated exposure to extreme hot or cold conditions; avoid exposure to workplace hazards.

(Tr. 21). Plaintiff argues that the record does not support this finding because "substantial evidence supports the need for a sit/stand option due to pain" (Document No. 15 at p.16). This argument is not persuasive given the ALJ's inclusion of a sit/stand option in the assessed RFC. (Tr. 21).

Plaintiff also argues that the ALJ inappropriately substituted her own judgement for that of a competent medical opinion when assessing Plaintiff's RFC. (Document No. 15 at p.18). It appears to the undersigned that the ALJ did not make an arbitrary decision; rather she carried out her responsibility to weigh evidence and make factual findings. The Commissioner argues that the ALJ's findings concerning Plaintiff's RFC reflected all of the functional limitations identified by the state agency physician and some additional and greater limitations warranted by evidence the state agency physician did not review, including limitations corresponding to Plaintiff's doctors' restrictions. (Document No. 18 at p.6 citing Tr. 492-501). The undersigned agrees.

Plaintiff's concern focuses most on the ALJ's finding that Plaintiff could stand/walk for six hours in an eight hour day if allowed a sit/stand option. Plaintiff contends that her own subjective statements and opinions from her treating physicians contradict this finding. (Document No. 15 at pp.15-18). The ALJ, however, explained that Plaintiff's testimony was not entirely credible, and that her physician's opinions were entitled to minimal weight.

The ALJ explained that,

15

> In summary, while the evidence does establish limited motion and some decreased strength in the left shoulder status post mastectomy, mild to moderate findings regarding carpal tunnel syndrome in right hand and mild findings in the left hand, problems with mild to moderate foot pain resulting from plantar fasciitis, the above-cited residual functional capacity adequately addresses the claimant's limitations from her impairments

(Tr. 34).

The undersigned concludes that substantial evidence supports the ALJ's conclusions regarding the Plaintiff's RFC.

### D. **Plaintiff's Credibility**

Finally, Plaintiff argues that the ALJ erred in making an unsupported determination of Plaintiff's credibility. (Document No. 15 at p.10). Once it is determined that a claimant has an impairment that could reasonably produce the symptoms alleged, the ALJ considers those symptoms, including pain, when determining disability.[10] An ALJ considers the extent to which she may reasonably accept a claimant's symptoms as consistent with the record evidence, and how these symptoms limit the claimant's work capacity. 20 C.F.R. §§ 404.1529(a), 404.1529(c)(1). Primarily, an ALJ considers objective medical evidence, which is obtained from medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1529(c)(2). Lack of objective evidence does not automatically negate an individual's subjective statements. Id., accord Social Security Ruling ("SSR") 96-7p. Rather, the adjudicator considers these statement's credibility, or consistency, with the entire case record based on the following factors: affect on activities of daily living; location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors;

---

[10] See 20 C.F.R. § 404.1528(a)(defining "symptoms" as an individual's own description of their physical or mental impairment).

the type, dosage, effectiveness, and side effects of medication; treatment received; measures taken to alleviate symptoms, and any other relevant factors. 20 C.F.R. §§ 404.1529(c)(3)(I)-(vii), 404.1529(c)(4); accord SSR 96-7p. An ALJ's credibility finding need not mechanically recite findings regarding each credibility factor, but it must "be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p.

It is the ALJ who determines the weight of evidence, makes findings of fact, and resolves evidentiary conflicts. Hays, 907 F.2d at 1456. Such deference also extends to an ALJ's credibility determination. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). Here, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (Tr. 32). First, the ALJ focused on inconsistencies in Plaintiff's testimony. See SSR 96-7p (noting that "one strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record"), accord Mickles v. Shalala, 29 F.3d 918, 927 (4th Cir. 1994)(stating that complaints of pain "need not be accepted to the extent they are inconsistent with the available evidence"). The ALJ noted that Plaintiff testified she stopped working on August 15, 2001, due to the inability to stand due to foot pain, or to use her hands due to carpal tunnel syndrome. (Tr. 32). Contemporaneously recorded treatment notes, however, "contain scant or no mention of foot pain or hand/wrist symptoms." (Tr. 32). Records from Rajal Patel, M.D., and Adam Shapiro, M.D., provide little objective evidence of foot pain and indicate that it was "mostly resolved" by October 2001. (Tr. 32). Further, Plaintiff made minimal complaints of carpal tunnel symptoms from 1998 until initial treatment in February 2002, when she displayed significant right hand symptoms and mild left hand symptoms. (Tr. 427). In June 2002, however, Dr. Sherrill, her orthopedic surgeon, noted that her carpal tunnel syndrome

was "really doing quite well" following a right carpal tunnel release three months earlier (Tr. 32). The ALJ also considered Plaintiff's testimony that she had fallen off a ladder as recently as October 2005. (Tr. 32). The ALJ found that this "suggests that she has been involved in more physical activities than she has alleged." (Tr. 32).

The ALJ also focused on the Plaintiff's treatment, medications received, and compliance with her physician's instructions. See 20 C.F.R. § 404.1529(c)(3) (noting that in assessing pain, an ALJ considers medication and treatment received); Mickles, 29 F.3d at 930 (noting that "an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility"). The ALJ notes that Plaintiff received little treatment throughout the majority of 2003, and that prior to 2004 or 2005, she took minimal medication for pain. (Tr. 32). The ALJ explains:

> The record contains several references to non-compliance on the part of the [Plaintiff] regarding the recommendations of her physicians. For example, she stopped taking her anti-hypertensive medications on more than one occasion and on another occasion failed to consistently take one of two anti-hypertensive medications prescribed ... She also did not consistently wear her wrist splints for carpal tunnel syndrome, nor did she wear her orthotics as fully recommended or use her BIPAP machine as recommended, or follow-through on exercises recommended by physical therapy for her hands and shoulder ... Her history of non-compliance suggests that her symptoms were not as severe as alleged....

(Tr. 32). The ALJ appropriately reasoned that Plaintiff's history of non-compliance reflected negatively on her subjective allegations, noting that "if her symptoms were as severe as alleged, it would seem she would follow her physician's instructions fully to gain the most efficacy from her prescribed treatments." (Tr. 32).

The Fourth Circuit recognizes that "[p]ain is not disabling *per se,*" Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir.1986), and that "disability requires more than mere inability to work

18

without pain." Ferrante v. Bowen, 869 F.2d 593, 1989 WL 14408 at *4 (4th Cir. Feb. 7, 1989) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)). The ALJ did not contest that Plaintiff suffers from some pain and limitation, but rather that this pain and limitation are not so severe as Plaintiff alleges. (Tr. 32). The ALJ's credibility determination is supported by the evidence.

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 390 (1971). As such, the undersigned will recommend that the Commissioner's decision should be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 14) be **DENIED**; Defendant's "Motion For Judgment On The Pleadings" (Document No. 17) be **GRANTED**; and that the Commissioner's determination be **AFFIRMED**.

## VI. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact and conclusions law and the recommendations contained herein must be filed within fourteen (14) days after service of same. Fed.R.Civ.P. 72 (2010). Responses to objections must be filed within fourteen (14) days after service of the objections. Failure to file objections to this Memorandum and Recommendation with the District Court will preclude the parties from raising such objections on

appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of Court is directed to send copies of this Memorandum and Recommendation to counsel for the parties, and to the Honorable Richard L. Voorhees.

**SO RECOMMENDED**.

Signed: May 21, 2010

David C. Keesler
United States Magistrate Judge